IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


ROSIE MAY ABRAMS,                          :
COURTNEY VASHAY ABRAMS and
JERMAINE ABRAMS,                           :

    Plaintiffs,                            :

vs.                                        :    CA 12-0432-KD-C

QBE INSURANCE CORPORATION,                 :

    Defendant/Garnishee.


## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiffs' motion to remand (Doc. 10; *see also* Doc. 11 (brief in support of plaintiffs' motion to remand)), QBE Insurance Corporation's response and objection to remand (Doc. 13; *see also* Doc. 14 (notice of filing exhibits in support of QBE's response and objection)), plaintiffs' reply (Doc. 18), and plaintiffs' notice of filing exhibit in support of remand (Doc. 19). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** plaintiffs' motion to remand (Doc. 10).

## FINDINGS OF FACT

On November 12, 2009, plaintiffs filed suit against Hodges Chapel, LLC, and fictitious defendants, in the Circuit Court of Mobile County, Alabama, therein asserting claims of negligence, wantonness, outrage, and breach of contract. (Doc. 1, Exhibit A,

COMPLAINT.) In plaintiffs' first amended complaint, filed January 7, 2010, Whispering Pines Cemetery, LLC was added as a defendant; otherwise, no substantive changes were made to the complaint. (Doc. 1, Exhibit B, FIRST AMENDED COMPLAINT.)[1]

---

[1] The relevant facts surrounding Whispering Pines Cemetery, LLC and the operation of Whispering Pines Cemetery, as it relates to these plaintiffs, is contained in the April 11, 2012 Order of Default Judgment entered by Mobile County Circuit Court Judge Charles Graddick, as follows:

WPC[, LLC] is the owner, operator, and manager of Whispering Pines Cemetery [] located in Mobile County, Alabama.

. . .

Bud Johnson Abrams ("Mr. Abrams") was the husband of Plaintiff Rosie Mae Abrams and the father of Plaintiffs Courtney Vashay Abrams and Jermaine Abrams. On August 24, 2007, Mr. Abrams passed away. On September 1, 2007, Mr. Abrams was buried at the Cemetery.

On May 30, 2009, Rosie Abrams purchased a headstone for Mr. Abrams's grave. On July 14, 2009, the headstone was delivered to the Cemetery. On July 18, 2009, employees and/or agents of WPC placed the headstone over a grave that was not the grave of Mr. Abrams. Subsequently, the Abrams family was unable to locate Mr. Abrams's headstone at the Cemetery. The Abrams family then went to WPC's office where they were told that someone would meet them at the Cemetery to show them where Mr. Abrams's headstone had been placed. The Abrams family was then met by an employee of WPC at the Cemetery, who took them to a location in the Cemetery that was approximately 500 yards away from where Mr. Abrams's graveside service had been held on September 1, 2007. The employee of WPC then showed the family where Mr. Abrams's headstone had been placed over a grave. The Abrams family informed the employee, and the management of WPC, that Mr. Abrams's body was not buried in the location where the headstone had been placed. WPC told the Abrams family that the family was mistaken and that Mr. Abrams was in fact buried where WPC had placed Mr. Abrams's headstone.

On June 8, 2010, the human remains buried in the grave where WPC placed Mr. Abrams's headstone were exhumed. The remains were not the remains of Mr. Abrams. The remains were later identified as belonging to Johnny Jackson, Jr. WPC had no record of Johnny Jackson, Jr. being buried in the Cemetery.

Subsequently, the Abrams family had to go to the Cemetery and show WPC where Mr. Abrams had been buried. On September 17, 2010, the remains of Mr. Abrams were exhumed from a location in the Cemetery for which WPC had no record of anyone ever being buried. On September 17, 2010, Jermaine Abrams was required to view and identify the decomposed body of his father who had been buried over three years previously.

(Continued)

On February 12, 2010, the law offices of Stewart Howard, P.C. advised Phoebe K. Hodge of Whispering Pines Cemetery, LLC that its office represented QBE Insurance Corporation, who had received a claim "for the defense of a Complaint . . . filed against [Whispering Pines] by Rosie May Abrams, Courtney Vashay [Abrams], and Jermaine Abrams." (Doc. 10, Exhibit A, at 1.)[2] QBE's counsel advised Whispering Pines that QBE was going to defend the complaint subject to reservation of its rights under the policy of insurance. (*Id.*)

> This reservation includes the right to investigate the facts of this case without any waiver of rights, the right to refuse to participate in settlement, the right to engage in settlement, the right to deny any coverage for this case, the right to settle this case without any obligation under the contract, the right to decline to pay a judgment entered against your company, the right to withdraw the defense, or any other right. QBE does not waive any right it has under the policy by any act taken with respect to your defense or its review or investigation of this claim.
>
> This letter is being written in an effort to bring to your attention some of the allegations in the Complaint and certain provisions of your insurance policy that indicate that there may not be coverage for these claims.
>
> . . . .
>
> Please understand that in providing a defense, and in continuing to investigate the facts and circumstances of this claim or any claim arising therefrom, in negotiating for a compromise settlement, in making any settlement, or in any way acting or failing to act, QBE reserves the

---

(Doc. 1, Exhibit H, at 2 & 3-4.)  It is clear from the Complaint for Declaratory Judgment filed by QBE in Civil Action No. 12-00054-KD-C, and attachments thereto, that QBE issued a Commercial General Liability policy of insurance to Whispering Pines Cemetery, LLC, with a stated policy term of March 26, 2009 to March 26, 2010 that was cancelled by Whispering Pines Cemetery, LLC on November 25, 2009. *See QBE Ins. Corp. v. Whispering Pines Cemetery, LLC, et al.*, CA 12-00054-KD-C, Doc. 1, Exhibits J & K.

[2]     The docket sheet in the underlying action reflects that Richard C. Wilkins, Esquire, filed his notice of appearance as counsel of record for Whispering Pines Cemetery, LLC on February 10, 2010. (*Compare* Doc. 10, Exhibit D, at 2, February 10, 2010 Entries *with id.* at 1, January 7, 2010 Entry.)

> right to set up or claim any and all defenses of non-coverage under the policy, and any right available to recoup expenses and fees incurred. Additionally, *these rights include the right to withdraw from the defense of this lawsuit with reasonable notice to Whispering Pines Cemetery, LLC, if at any time it is determined that no coverage is afforded*. By agreeing to defend, QBE does not waive any objection or defense to paying any judgment that may ultimately be determined against your company in this matter. By accepting this defense, QBE assumes you consent to the defense under reservation.

(*Id.* at 1 & 16-17 (emphasis supplied).)

There was much activity in this action in the Circuit Court of Mobile County, Alabama between the time the foregoing letter was addressed and the letter dated some four months later—June 21, 2010—from counsel for QBE advising Whispering Pines that QBE was withdrawing its defense of Whispering Pines in the Abrams' action. (Doc. 10, Exhibit B.)[3]

> Based on the information which has been provided, there is no coverage under the policy, nor are there any other obligations owed, for the defense of the Complaint. The matters provided above which form the decision of no coverage may not be the only applicable provisions of your policy or policies which limit or restrict coverage. Other provisions of your policy or policies could otherwise limit or restrict coverage as well. These provisions appear to clearly apply based on the information which has been presented. QBE expressly reserves and does not waive any or all of its rights.
>
> If you believe that QBE's reasons for non-coverage given in this letter are incorrect, then QBE will undertake a further review of the claims, which for now appears to QBE to be unnecessary. Should you have any new information which you believe contradicts any of the information provided herein or which you believe is otherwise incorrect, please notify our office in writing immediately and provide any related written documentation. We will forward this to QBE for its review. QBE

---

[3] For instance, in February of 2010, plaintiffs filed their second amended complaint adding Smalls Mortuary as a defendant and also a motion for exhumation and counsel representing Whispering Pines, Mr. Wilkins, filed a motion to dismiss, or, in the alternative, for summary judgment (Doc. 10, Exhibit D, at 2); in March of 2010, the motion for exhumation was granted (*id.* at 3); in May of 2010, plaintiffs filed their third amended complaint (id. at 3-4); and in June of 2010, the fourth amended complaint was filed (*id*. at 5).

>will be more than happy to review any information which you provide and reevaluate the coverage determination that has been made.

(Doc. 10, Exhibit B, at 3.)

Following QBE's decision to not defend Whispering Pines, significant discovery and motion practice occurred in the Abrams action throughout the remainder of 2010 and the entirety of 2011. (*See* Doc. 10, Exhibit D, at 5-14.) During this period, numerous discovery and dispositive motions were filed (*see id.*) and plaintiffs amended their complaint two more times, once on December 3, 2010 (*see id*. at 10) and, again, on August 10, 2011 (*see id.* at 13). Approximately one and one-half months before the filing of the sixth amended complaint, the trial court entered an order—on June 24, 2011— referring the matter to mediation with Charles Fleming, Esquire. (*Id.*) It is not apparent from the state court docket sheet when the case was mediated but what is apparent is that counsel for Whispering Pines, Richard Wilkins, Esquire, filed a motion to withdraw on November 10, 2011 and this motion was granted by the trial court on November 21, 2011. (*Id*. at 14.) According to QBE, Wilkins represented another insurance carrier defending Whispering Pines under a reservation of rights and that his motion to withdraw was based upon that carrier's decision to withdraw its defense and deny coverage to Whispering Pines in the Abrams action. (*Compare* Doc. 1, at ¶ 11 *with* Doc. 10, Exhibit D, at 14.) Ultimately, mediation was successful with respect to defendants Hodges Chapel, LLC and Smalls Mortuary; the action, as to Smalls Mortuary, was dismissed with prejudice on January 6, 2012 and Hodges Chapel, LLC was dismissed with prejudice on January 24, 2012. (*See id*. at 14-15.) Left as the sole defendant in the action was Whispering Pines. (*See id*. at 15.)

On January 27, 2012, QBE Insurance Corporation filed a Complaint for Declaratory Judgment in this Court. *See QBE Ins. Corp. v. Whispering Pines Cemetery,*

*LLC, et al.,* Civil Action No. 12-0054-KD-C, Doc. 1. This action seeks to declare the rights and obligations of the parties with respect to insurance coverage afforded under a policy of insurance issued by QBE to Whispering Pines Cemetery, LLC. *Id.* at 1, 6-12 & 14-26. This action names each of the plaintiffs in the underlying action as defendants in the Declaratory Judgment Complaint.[4]

"On February 3, 2012, Whispering Pines, LLC filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of Alabama, Case No. 12-00369." (Doc. 1, ¶ 16.) Approximately one and one-half month later, "[o]n March 20, 2012, Judge Shulman granted the Abrams Plaintiffs' Motion for Relief from Stay." (*Id.* at ¶ 17.) On March 30, 2012, Mobile County Circuit Judge Charles Graddick set the Abrams' action against Whispering Pines for trial on April 5, 2012. (Doc. 10, Exhibit D, at 15.) "On April 5, 2012, the Court called the case for trial and no one from Whispering Pines Cemetery appeared for trial." (Doc. 1, ¶ 20.) As reflected in the trial court's April 11, 2012 order entering default judgment against Whispering Pines, "[o]n April 5, 2012, Plaintiffs' counsel made a large evidentiary submission and has subsequently provided the Court with numerous additional sworn affidavits." (Doc. 1, Exhibit H, ORDER, at 2.) The trial court's April 11, 2012 order otherwise reads, in relevant part as follows: "The Plaintiffs presented substantial evidence of their claims of negligence, wantonness, and outrage. Plaintiffs['] evidence was overwhelming and uncontroverted. The Court hereby enters judgment against WPC and in favor of Plaintiffs and assesses compensatory damages in the amount [of] one million five

---

[4] In addition, the declaratory judgment action names as defendants Queen Pettaway and Carlis Eaton, as well as Tamarra and Lesester Martin, who also brought claims pending in the Circuit Court of Mobile County, Alabama against Whispering Pines. *See id.* at 1-2.

hundred thousand dollars ($1,500,000) and punitive damages in the amount of one million dollars ($1,000,000)." (Doc. 1, Exhibit H, ORDER, at 10.) "On or about May 30, 2012, Plaintiffs caused a Process of Garnishment to be issued in the underlying action against Garnishee QBE Insurance Corporation." (Doc. 1, ¶ 23; *compare id. with* Doc. 10, Exhibit D, at 15.) "The Process of Garnishment was [] served upon QBE's agent for service of process on or about June 5, 2012." (Doc. 1, at ¶ 24.) QBE removed the action to this Court on July 5, 2012 (Doc. 1), that is, thirty (30) days following its receipt of the process of garnishment, and argues in the notice of removal that "[g]arnishment actions brought post-judgment are separate civil actions that are removable." (Doc. 1, ¶ 28.)

Plaintiffs filed their motion to remand on August 6, 2012. (Doc. 10.) Therein, plaintiffs stake the primary position that since they filed their complaint in state court on November 12, 2009, this Court's determination of the propriety of removal is governed by the language contained in the removal statutes, 28 U.S.C. §§ 1441 and 1446, prior to the effective date of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Public Law 112-63 (Doc. 10, at 3-4) and, therefore, "[u]nder *former* 1446(b), the removal was untimely because the underlying action was pending for greater than one year prior to the improper removal of the garnishment proceeding." (*Id*. at 5) This result is obtained, according to plaintiffs, because QBE's removal petition grounds this Court's jurisdiction on diversity of citizenship which thereby affords deference to Alabama's substantive law, which, in turn, recognizes that "'garnishment is an ancillary

proceeding and <u>not an original suit</u>.'" (*Id.* at 5-6 (emphasis in original; citations omitted).)[5]

QBE filed its response and objection to plaintiffs' motion to remand on August 24, 2012 (Doc. 13) and plaintiffs their reply on August 30, 2012 (Doc. 18). In addition, plaintiffs, on September 11, 2012, filed a notice of filing exhibit in support of their motion to remand. (Doc. 19.) That exhibit is QBE's September 7, 2012 Interrogatories and Request for Production to Rosie May Abrams, Courtney Vashay Abrams, and Jermaine Abrams in QBE's declaratory judgment action. (*See id.*, Exhibit A.) According to plaintiffs, this exhibit "unquestionably proves the QBE's removal of this garnishment proceeding and its Complaint for a Declaratory Judgment amount to no more than an improper collateral attack upon Mobile Presiding Circuit Judge Charles Graddick's April 11, 2012, judgment entered against Whispering Pines Cemetery, LLC in the underlying action." (Doc. 19, at 1.)

## CONCLUSIONS OF LAW

### A.  **Jurisdiction in General**.

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval

---

[5]  Plaintiffs also assert the following argument: "In this case, QBE seeks 'consolidation' of the improperly removed garnishment proceeding with its earlier filed declaratory judgment action []. Pursuant to *former* § 1441(c), this Court should abstain from hearing or considering either matter, but should instead 'remand all matters' because state law 'predominates.'" (Doc. 10, at 5.)

statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"  (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted).  Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 34-44),  the removing party, QBE, bears the burden of establishing complete diversity of citizenship, that is, that plaintiffs are diverse from the defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v.*

*Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).[6] Moreover, as a procedural matter, the removal must be timely. *See, e.g., Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'"); *cf. Moore v. North America Sports, Inc.*, 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").

> B. **Whether the Removal of this Action was Timely** .  The undersigned now turns full attention to the plaintiffs' primary argument in favor of a remand of this action to the Circuit Court of Mobile County, Alabama which is that since they filed their complaint in state court on November 12, 2009, this Court's determination of the propriety of removal is governed by the language contained in the removal statutes, 28 U.S.C. §§ 1441 and 1446, prior to the effective date of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Public Law 112-63 (Doc. 10, at 3-4) and "[u]nder *former*

---

[6] In moving to remand this action, plaintiffs make no argument that the jurisdictional amount has not been met nor, in truth, do they argue that complete diversity of citizenship does not exist (*see* Docs. 10-11 & 18); instead, plaintiffs merely stake the position that the removal of this action was untimely and, further, that this Court should abstain from deciding any issue raised by the garnishment (*see id.*).

With respect to diversity of citizenship, the undersigned notes that plaintiffs merely state in passing that "[t]he Notice of Removal asserts that jurisdiction is premised upon diversity of citizenship, as QBE contends that the Alabama corporate residence of its insured (Whispering Pines Cemetery) may be disregarded." (Doc. 10, at ¶ 4.) Because plaintiffs take no issue with QBE's removal statement in this regard, the undersigned finds that plaintiffs have implicitly conceded the soundness of QBE's removal statement. Even if the undersigned has misunderstood plaintiffs' position in this regard, the ultimate conclusion would be no different inasmuch as this Court, in *Stabler v. Transportation Ins. Co.,* 2006 WL 6915489 (S.D. Ala. July 24, 2006), made clear that where (as here) plaintiffs obtain a judgment against the wrongdoer before initiating a garnishment action against the wrongdoer's insurer (that is, QBE), the garnishment action is not a "'direct action' for § 1332(c)(1) purposes[]" so as to strip this Court of diversity jurisdiction. *Id.* at *4; *see also id*. at *3. Therefore, QBE is properly deemed a citizen of New York (*see* Doc. 1, ¶ 35) for diversity purposes and Whispering Pines Cemetery, LLC's Alabama citizenship does not attach or accrue to QBE. *Id.* at *4 ("Accordingly, Transportation is properly deemed a citizen of Illinois for diversity purposes, and Forest's Alabama citizenship does not accrue to Transportation here."). As was the case in *Stabler,* "[t]his action is between citizens of different states and involves an amount in controversy in excess of $75,000; therefore, federal subject matter jurisdiction properly lies pursuant to 28 U.S.C. § 1332, and remand is not warranted on jurisdictional grounds." *Id*.

1446(b), the removal was untimely because the underlying action was pending for greater than one year prior to the improper removal of the garnishment proceeding." (*Id*. at 5) This result is obtained, according to plaintiffs, because QBE's removal petition grounds this Court's jurisdiction on diversity of citizenship which thereby affords deference to Alabama's substantive law, which, in turn, recognizes that "'garnishment is an ancillary proceeding and not an original suit.'" (*Id*. at 5-6 (emphasis in original; citations omitted); *see also* Doc. 11, at 6-12) In making this argument, plaintiffs urge the undersigned to look solely to Alabama law and to eschew binding precedent from this very Court holding that garnishment proceedings are separate and independent actions that are removable. (*See* Doc. 11, at 11-12.) The undersigned declines to chart the path suggested by plaintiffs and, instead, finds that its analysis is informed by this Court's prior decisions in *Stabler, supra*, and *Armentrout v. Atlantic Cas. Ins. Co.,* 731 F.Supp.2d 1249 (S.D. Ala. 2010).[7]

In reaching the determination that a garnishment action is, in fact, a separate and independent action for removal purposes, this Court, in *Stabler,* rejected the plaintiff's suggestion that a garnishment action "must be classified as an ancillary proceeding under Alabama law." *Id*. at *5 & n.7 (citations omitted). This Court recognized that while it is true that Alabama courts have held that a garnishment action is an ancillary proceeding under Alabama law, since federal law—not state law—"controls as to whether an action is removable under 28 U.S.C. § 1441[,]" *id.* at n.7, citing *Randolph v. Employers Mut. Liability Ins. Co.,* 260 F.2d 461, 463-464 (8th Cir. 1958) ("state classification

---

[7] The undersigned simply notes that these cases were decided prior to the effective date of the Federal Courts Jurisdiction and Clarification Venue Clarification Act of 2011, and since, as plaintiffs argue, the propriety of removal of this action is governed by former §§ 1441 and 1446, these cases obviously inform the disposition of this action.

of garnishment proceedings is in no way binding on federal court's determination of whether garnishment is independent action for removal purposes"); *Johnson v. Wilson,* 185 F.Supp.2d 960, 963 (S.D. Ind. 2002) ("rejecting Indiana state court's characterization of garnishment proceeding as ancillary as not controlling for removal analysis"), it was persuaded to follow the clear weight of federal authority and hold that a garnishment action is a separate and independent action for removal purposes. *Id.* at 5, citing, *e.g., Webb v. Zurich Ins. Co.,* 200 F.3d 759, 760 (11th Cir. 2000) ("noting that lower court correctly denied motion to remand garnishment proceedings that 'were a separate and independent cause of action with diversity of the parties'"); and *Butler v. Polk,* 592 F.2d 1293, 1295 (5th Cir. 1979) ("opining that 'garnishment actions against third-parties are generally construed as independent suits, at least in relation to the primary action'"). The undersigned agrees with *Stabler* and, therefore, recommends that this Court determine that the garnishment proceeding initiated by plaintiffs upon their issuance of process of garnishment on May 30, 2012 constitutes a separate and independent action for removal purposes.

In light of the foregoing, the undersigned need reject the plaintiffs' contention that this action was untimely removed. Although it is certainly true that former § 1446(b) required a removal predicated on diversity of citizenship to be completed within one year after commencement of the action—as, in truth, does the new statute, *see* 28 U.S.C. § 1446(c)(1) ("A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.")—the undersigned agrees with *Stabler* that the operative commencement date of the action is the date on which the process of garnishment was filed (May 30, 2012), not the date on which the underlying

12

Mobile County Circuit Court proceedings began (November 12, 2009). *Stabler*, at *5 ("[T]he operative commencement date is March 27, 2006 (the date on which Stabler filed process of garnishment), not the date on which the underlying Marengo County Circuit Court proceedings began."). Because the garnishment action commenced on May 30, 2012, QBE has certainly complied with the one-year deadline set forth in former § 1446(b)—as well as current § 1446(c)(1)—such that its removal of the garnishment action is timely.[8]

---

[8] The undersigned, in addition, is not persuaded by the plaintiffs' argument that "removals of actions commenced before the effective date of Pub. L. 112-63 'shall be deemed to commence on the date the action was commenced, within the meaning of State law, in State court.'" (Doc. 11, at 12 (emphasis in original; citation omitted.) In making this argument, plaintiffs rely on language not contained in the removal or diversity statutes but, rather, on language Congress used to explain the effective date and applicability provisions of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, as follows:

**Effective and Applicability Provisions**

. . .

"**(a) In general.**—Subject to subsection (b), the amendments made by this title . . . shall take effect upon the expiration of the 30-day period beginning on the date of the enactment of this Act [Dec. 7, 2011], and shall apply to any action or prosecution commenced on or after such effective date.

"**(b) Treatment of cases removed to Federal court.**—For purposes of subsection (a), an action or prosecution commenced in State court and removed to Federal court shall be deemed to commence on the date the action or prosecution was commenced, within the meaning of State law, in State court."

28 U.S.C. § 1332, HISTORICAL AND STATUTORY NOTES, at 924. In other words, this language is solely looked to for purposes of determining the effective date of the amendments to §§ 1441 and 1446, etc., and, more specifically, directing when federal courts should apply the former contents of these statutes or the current contents of the statutes. *Compare id. with Christiansen v. West Branch Community School Dist.*, 674 F.3d 927, 932 n.2 (8th Cir. 2012) ("The instant action was 'commenced' in state court with the filing of Christiansen's complaint in September 2010, [], and, therefore, the recent amendments to the removal statutes do not apply to this case."). This language, therefore, solely supports the plaintiffs' position that the recent amendments to the removal statutes do not apply to this case; it has absolutely no import with respect to this Court's analysis in *Stabler* and *Armentrout*, *supra*—pre-amendment cases— plaintiff's arguments to the contrary notwithstanding.

C. **Plaintiffs' Abstention Arguments**.  Plaintiffs final contention is that "[u]nder Principles of Comity, Federalism, Practicality, and Avoiding Gratuitous Interference with the Hard Work of the Learned State Court Judge, this Court Should Abstain from Deciding Any Issue Raised by the Garnishment Just as it Should Abstain from Granting the Declaratory Relief Sought in Case No. 1:12-cv-00054-KD-C[.]" (Doc. 11, at 13 (emphasis deleted).)[9]

In making the foregoing argument, plaintiffs rely partially on former § 1441(c): "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." *Id*. Plaintiffs conclude their "remand" argument in this regard in the following manner:

> Plaintiffs' Complaint in the underlying case asserts purely state law claims and causes of action. The only basis for removal was QBE's request for a declaratory judgment under the federal Declaratory Judgment Act. 28 U.S.C. § 2201. But merely seeking a federal "second guessing" of fact-finding already conducted by a state court hardly constitutes a "substantial federal question." . . . Simply put, there are no substantive federal questions that this Court is or could be called upon to decide. . . .
>
> Principles of comity, and deference to Plaintiff's original choice of forum, as informed by the discretionary authority afforded by former §

---

[9] The undersigned simply **DECLINES** to recommend that the Court "abstain" from deciding the declaratory judgment action, CA 12-0054-KD-C, inasmuch as that action has been pending in this Court since January 27, 2012, *id*. at Doc. 1, discovery is now complete, *see id*. at Doc. 20 (setting a discovery cutoff date of October 19, 2012), and dispositive motions filed, *see id*. at Docs. 64 & 68. Moreover, the motion for consolidation, *see id*., Doc. 27, has been referred to District Judge DuBose for a ruling, not the undersigned. It need be emphasized that the instant action has not been consolidated with the declaratory judgment action (*see* Doc. 7 (motion to consolidate referred to Judge DuBose)) and, therefore, plaintiffs merely confuse the jurisdictional question presented in this case by liberally discussing the declaratory judgment action in their pleadings filed in this case.

> 1441(c), all suggest that this Court should give the greatest possible weight to the arguments advanced in support of Plaintiff's Motion to Remand. This case simply does not belong in federal court.

(Doc. 11, at 14, 14-15 & 15.)

The language from former § 1441(c) makes clear that it only applies to those cases in which an independent claim within the jurisdiction conferred by § 1331 is joined with one or more non-removable claims, making the entire case removable and imbuing the federal court with the discretion to decide all issues or to remand those issues as to which State law predominates. The primary problem for the plaintiffs is that the removal of the instant garnishment action was based upon the jurisdiction conferred by § 1332—that is, diversity jurisdiction (*see* Doc. 1)—not by federal question jurisdiction conferred by § 1331.[10] The removal of this action was not based upon the Declaratory Judgment Act (*see* Doc. 1) and, therefore, former § 1441(c) is simply not applicable to the analysis to be performed in this case. Moreover, to the extent plaintiffs argue that QBE's attempt to consolidate this removed garnishment action with its previously-filed declaratory judgment action should lead this Court to apply § 1441(c) and "remand" both cases, such argument need be rejected because only the "removed" garnishment action is before the undersigned for consideration and plaintiffs' argument would have this Court pound "square" pegs into "round" holes.[11]

Plaintiffs' final argument appears to be that assuming the Court does not believe both cases should be remanded, the garnishment case should be remanded and this

---

[10] *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[11] Plaintiffs have cited to no case which has combined a Declaratory Judgment action with a separate action subsequently removed from State court and then "remanded" both cases under former § 1441(c) based upon the theory that State law predominates.

15

Court should abstain from exercising jurisdiction over the Declaratory Judgment action. (*Compare* Doc. 11, at 15-18 *with* Doc. 18, at 4 ("[U]nder *Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495 (1942) the Court should exercise its discretion in the declaratory judgment action to dismiss or stay that action pending resolution of the remanded garnishment.").) In *Stabler*, the court performed a relatively lengthy abstention analysis in concluding that the removed garnishment action should remain in federal court but stayed until the Marengo County Circuit Court "fully resolved the issue of the viability of the consent judgment." *Id*. at *10; *see also id.* at *6-9.

> A cornerstone of Stabler's Motion to Remand is that this action should be remanded to state court pursuant to principles of comity and federalism because the state court is presently confronting identical legal and factual issues to those presented in the instant garnishment action, requiring this Court to rehash issues that are being litigated in Marengo County. Transportation's opposition brief is strangely silent on this critical point.
>
> It is well established that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. However, both Eleventh Circuit case law on comity and federalism, as well as the doctrine of *Colorado River* abstention, lend strong support to Stabler's position that federal jurisdiction should not be exercised in these circumstances. Both lines of authority proceed from the premise that while a federal court is not precluded from exercising jurisdiction if there is also a pending parallel state court action, a district court is under no compulsion to exercise that jurisdiction where the controversy may be settled more expeditiously in the state court.
>
> .   .   .
>
> The Court is well aware that federal courts have a virtually unflagging obligation to exercise the jurisdiction given them. Nonetheless, this is one [of] those limited or exceptional cases in which *Colorado River* abstention is warranted to prevent piecemeal litigation, to avoid misallocation of judicial resources, and to allow the efficient resolution of identical legal issues raised in federal proceedings that significantly postdate their state counterparts. Separate and apart from *Colorado River* abstention, the doctrines of comity and federalism as espoused by the Eleventh Circuit in [*Merrill Lynch, Pierce, Fenner & Smith v.*] *Haydu*[, 675 F.2d 1169 (11th Cir. 1982)] demand abstention. Otherwise, the issues of

> insurance coverage, legitimacy of the consent judgment, and enforcement of that consent judgment against Transportation would be litigated on a dual-track, presented to both this Court and the Marengo County Circuit Court for resolution. In fact, those issues have already been presented to the state court, and at least some of them are ripe for ruling by the state court at this time. For this Court to swoop in at the last minute and pluck those state law issues from the jaws of the state court that has been grappling with this case for more than three years would be the epitome of unwise, inefficient judicial administration and would amount to flagrant disregard of fundamental principles of comity and federalism. Under the circumstances, abstention is the only appropriate course.
>
> The remaining obvious question is whether this action should be remanded or stayed pending resolution of issues concerning coverage, liability of Transportation, and enforceability of the consent judgment in state court. The Eleventh Circuit recently held that a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine. More importantly, the Supreme Court has held that federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. This garnishment proceeding is in the nature of an action for damages, not one seeking injunctive or declaratory relief, inasmuch as Stabler seeks exclusively to recover certain funds from Transportation. Therefore, under *Quackenbush* [*v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)] and its progeny, it would be clear error for this Court to remand on abstention grounds. Rather, the appropriate (and indeed, the only permissible) remedy is for this action to be stayed until such time as the overlapping issues have been resolved by the state court.

*Id*. at *6 & *9 (most internal citations, quotation marks, and ellipses omitted). There is no "safe haven" provided for the plaintiffs by the foregoing analysis from *Stabler*, or from this Court's analysis in *St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.*, 2005 WL 2739141, *9 (S.D. Ala. Oct. 24, 2005) ("The coverage issue, which is the focus of the instant declaratory judgment action [filed after the Choctaw County Circuit Court lifted the stay of the garnishment proceedings], is clearly a defense available to St. Paul in the ancillary garnishment proceeding which has been the subject of litigation between it and Ms. Hampton in the state courts of Alabama since August of 2004. Alabama courts, which decided unanimously that a writ of garnishment is the proper procedural vehicle for Ms. Hampton to attempt to satisfy her judgment against Johnson

17

Homes, have a particularly strong interest in deciding the Alabama contract issues raised in the federal declaratory action in the state courts given their collective decisions on the procedural vehicle question and the length of their association with the facts surrounding the underlying action against Johnson Homes. Certainly, the instant action would not serve to clarify the legal relations at issue in a manner that cannot also be accomplished in the state courts of Alabama. Rather, as indicated in *Brillhart*, where, as here, there is pending in state court another suit involving the same relevant parties and presenting the opportunity for ventilation of the same state law issues it would be sheer gratuitous interference by this Court to allow the declaratory judgment action to proceed. Stated differently, this Court finds that allowing the instant declaratory judgment action to proceed would increase the friction between federal and state courts and improperly encroach on state jurisdiction. It is imperative that this Court not race the state courts to *res judicata*, at the behest of St. Paul, given that this case involves the application of state law and is best decided by the state courts of Alabama. Accordingly, this Court abstains from this declaratory judgment action in favor of the parallel proceeding in the Circuit Court of Choctaw County, Alabama to which St. Paul has been a litigating party since August of 2004."),[12] given, as pointed out by QBE, that there is no part of the underlying action that remains to be decided by the Mobile County Circuit Court (i.e., there is no parallel state action) now that the garnishment has been properly removed to this Court, as heretofore found. In the underlying action, the

---

[12] In truth, the analysis in *St. Paul Fire & Marine Ins. Co., supra,* is of no assistance to the undersigned since the relevant motion in that case, a motion to dismiss, arose in the context of a declaratory judgment action that presented the same issues that were to be decided by the Choctaw County Circuit Court in the context of the ancillary garnishment action that had been pending before it since 2004. Here, of course, it is the garnishment action that has been properly removed to this Court within thirty days of service of the process of garnishment and nothing remains to be decided in the underlying action.

plaintiffs settled with defendants Hodges Chapel, LLC and Smalls Mortuary, obtained a default judgment against Whispering Pines Cemetery, LLC on April 11, 2012, and, based upon the default judgment, issued and served process of garnishment on QBE seeking $2.5 million plus 7.5% interest. Since, as aforesaid, the garnishment action was properly removed to this Court by QBE and garnishment was the sole issue left for the state court to decide, there is no basis for this Court to eschew its "'virtually unflagging obligation'" to exercise the jurisdiction properly afforded it in this action. *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (citation omitted).[13]

## CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiffs' motion to remand (Doc. 10) be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 15th day of November, 2012.

                        s/WILLIAM E. CASSADY
                        **UNITED STATES MAGISTRATE JUDGE**

---

[13] The abstention doctrine is simply not applicable in this case.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[14]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).